William SLATTERY, an individual, and Vincent Evola, an individual, Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

and

Chicago Local 458–3M, Graphic Communications International Union, AFL–CIO, Intervening Respondent.

No. 90–3307.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 16, 1991.

Decided April 14, 1992.

Rossie D. Alston, Jr., National Right to Work Legal Defense Foundation, Springfield, Va. (argued), for petitioners.

Alan Kaplan, N.L.R.B., Chicago, Ill., Aileen A. Armstrong, Elliott Moore, Robert F. Mace, William M. Bernstein (argued), N.L.R.B., Appellate Court, Enforcement Litigation, Washington, D.C., for respondent.

Eugene Cotton, Thomas D. Allison, Gillian F. Siegel, Cotton, Watt, Jones & King, Chicago, Ill., for intervenor.

Before COFFEY, MANION and KANNE, Circuit Judges.

MANION, Circuit Judge.

Petitioners Vincent Evola and William Slattery seek to set aside a decision of the National Labor Relations Board ("the Board") holding that Chicago Local No. 458–3M, Graphic Communications International Union, AFL–CIO ("Local 458") did not violate Section 8(b)(1)(B) of the National Labor Relations Act ("the Act"). We deny the petition for review.

## I.

The relevant facts in this case are not in dispute. Until 1983, Local 458 was the exclusive collective bargaining representative of lithographic production employees at Noral Color Corporation ("Noral"). Vincent Evola and William Slattery are employed by Noral and, until 1983, were members of Local 458. Evola and Slattery were supervisors and representatives of Noral for purposes of collective bargaining and adjustment of grievances.[1]

The last collective bargaining agreement between Noral and Local 458 expired on April 30, 1983 and was not extended or renewed. Instead of remitting their May 1982 dues, Evola and Slattery mailed letters of resignation to Local 458. On July 6, 1983, Local 458 notified Evola and Slattery that they were delinquent in their payment of union dues. On July 14, Local 458 notified Evola and Slattery that it did not accept their resignations from the union because they did not meet the requirements for resignation set forth in the International Union's constitution. Article 19.9 of the constitution provided that a member of the union could resign "only if he is in good standing and has ceased to be en-

gaged as an employee or in a supervisory capacity in an industry within the jurisdiction of the International." [2] Local 458 told Evola and Slattery that they could not resign from the union because they continued to work for Noral.

During August, Local 458 continued to send Evola and Slattery notices that they were delinquent in the payment of union dues. Then, on September 21, 1983, Local 458 sent both Evola and Slattery an "Expulsion Notice" notifying them that they had been expelled from the union for nonpayment of dues. On the next day, Local 458 sent letters to Noral notifying Noral that Evola and Slattery had been expelled from the union and requesting, pursuant to the collective bargaining agreement, that Noral discharge Evola and Slattery.[3] Local 458 did not send copies of these letters to Evola and Slattery; but, Evola obtained a copy from the union steward at Noral, and he gave a copy to Slattery. Slattery spoke to Noral's president, Alan Schneider, about the demands for discharge, and Schneider told him "not to worry about it."

Of course, by September, the collective bargaining agreement had been expired for five months. Accordingly, on September 27, 1983, Noral rejected Local 458's demands that Evola and Slattery be discharged and told Local 458 that it considered the demands unlawful under the National Labor Relations Act. On October 4, Local 458 informed Noral that its demands for the discharge of Evola and Slattery were an "inadvertent error"; that it had intended merely to advise Noral of the expulsions from the union; and that it "did

---

1. Under the Act, a "supervisor" is "any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward or discipline other employees...." 29 U.S.C. § 152(11). A supervisor can also be (although not all supervisors are) an "employer-representative." A supervisor is also an employer-representative if he acts as an agent of the employer during collective bargaining or in the settlement of employee grievances. *See* 29 U.S.C. § 158(b)(1)(B); *NLRB v. International Broth. of Electrical Workers, Local 340,* 481 U.S. 573, 580–89, 107 S.Ct. 2002, 2007–12, 95 L.Ed.2d 557 (1987).

2. The Board held that this restriction on resignation from union membership violated Section 8(b)(1)(A) of the Act and enjoined Local 458 from enforcing it. Local 458 does not appeal this ruling.

3. Section 2.3 of the collective bargaining agreement provided:

    Any employee who fails to tender union dues, or initiation fees to the union shall be discharged by the employer within five (5) days after receipt of notice from the union that the employee has failed to make the required payments to the union.

not intend to request discharge as a result of the expulsions" and "do not now make any such request." Neither Local 458 nor Noral provided Evola or Slattery with copies of the September 27th or October 4th letters. Evola and Slattery were not formally notified that Local 458 had retracted its demands for their discharge until January 10, 1984. On January 10, Local 458 sent both Evola and Slattery a letter enclosing a copy of the October 4th letter and stating that the demands for discharge were an unintentional error.

Evola and Slattery seem to have everything they wanted. Although they have been expelled from Local 458 rather than permitted to resign, they are no longer members of the union. In fact, Local 458 was eventually decertified. Also, they continue to be employed by Noral. However, in December 1983, Evola and Slattery filed charges with the National Labor Relations Board alleging that Local 458 violated Section 8(b)(1)(B) of the National Labor Relations Act, 29 U.S.C. § 158(b)(1)(B), by refusing to accept their resignations, expelling them from the union and demanding their discharge. Later, Noral was allowed to intervene in the case as an additional charging party.

A hearing was held before an administrative law judge on October 15, 1984. The ALJ held that Local 458 had violated Section 8(b)(1)(B) by refusing to accept the resignations of Evola and Slattery but found that Local 458 did not violate the Act by expelling Evola and Slattery from the union or demanding their discharge. Both parties filed exceptions to the ALJ's decision with the Board. The Board, on September 28, 1990, partly reversed the ALJ concluding that none of Local 458's activities violated Section 8(b)(1)(B). Evola and Slattery petitioned this court for review and ask us to set aside the Board's order.

We have jurisdiction to review the Board's order pursuant to Section 10(f) of the Act, 29 U.S.C. § 160(f). We must uphold the Board's decision "if its factual findings are supported by substantial evidence on the record as a whole and if its legal conclusions have a reasonable basis in the law." *NLRB v. George Koch Sons, Inc.*, 950 F.2d 1324, 1330 (7th Cir.1991) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951)).

## II.

Section 8(b)(1)(B) of the National Labor Relations Act makes it an unfair labor practice for a labor organization "To restrain or coerce ... an employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances." 29 U.S.C. § 158(b)(1)(B). This section prohibits not only direct pressure on an employer to control its choice of representatives but also indirect coercion of an employer through pressure applied to the employer's representatives. *See NLRB v. International Broth. of Electrical Workers, Local 340*, 481 U.S. 573, 580–86, 107 S.Ct. 2002, 2007–11, 95 L.Ed.2d 557 (1987); *American Broadcasting Co. v. Writers Guild of America, West, Inc.*, 437 U.S. 411, 422–26, 98 S.Ct. 2423, 2430–32, 57 L.Ed.2d 313 (1978); *Florida Power & Light Co. v. International Broth. of Electrical Workers, Local 641*, 417 U.S. 790, 798–805, 94 S.Ct. 2737, 2741–45, 41 L.Ed.2d 477 (1974).

Union discipline of employer-representatives violates Section 8(b)(1)(B) if it adversely affects the representative's performance of his collective bargaining or grievance adjusting functions. *Writers Guild*, 437 U.S. at 429, 98 S.Ct. at 2433; *Florida Power*, 417 U.S. at 804–05, 94 S.Ct. at 2744–45. Such discipline deprives the employer of the full services of the representative and hence restrains and coerces the employer's selection of those representatives. *Local 340*, 481 U.S. at 580, 107 S.Ct. at 2007; *Writers Guild*, 437 U.S. at 429, 98 S.Ct. at 2433. But, not all union discipline of employer-representatives violates Section 8(b)(1)(B). The employer-representative must be engaged in, and the discipline must affect, his performance of Section 8(b)(1)(B) activities—namely, collective bargaining, grievance adjustment or some other closely related activity. *Local*

*340*, 481 U.S. at 585–86, 107 S.Ct. at 2010–11.

In this case, Evola and Slattery argue that Local 458 violated Section 8(b)(1)(B) by refusing to accept their resignations, expelling them from the union and demanding their discharge. There is no dispute that Evola and Slattery were representatives of Noral with grievance adjustment and collective bargaining duties. The Board, as it was required to do, made a "factual inquiry" into whether Local 458's actions adversely affected Evola's or Slattery's performance of their collective bargaining or grievance adjusting duties. *Id.* (citing *Writers Guild*, 437 U.S. at 430, 98 S.Ct. at 2434). The Board found that none of Local 458's actions so affected Evola and Slattery and held, therefore, that Local 458 did not violate Section 8(b)(1)(B). We can set aside the Board's decision only if these factual findings are not supported by substantial evidence.

## A. Refusal to Accept Resignations

█ We agree with the Board that there is no evidence in the record tending to show that Local 458's refusal to accept Evola's and Slattery's resignations had an adverse effect on the performance of their collective bargaining or grievance adjusting duties. In fact, Evola and Slattery made no attempt to provide such evidence. Rather, they rely on *Typographical Union (Register Publishing)*, 270 N.L.R.B. 1386 (1984). In *Register Publishing*, a union had refused to accept the resignations of both employees and supervisors. The Board noted its long-standing rule that the refusal to accept the resignations of the employees violates Section 8(b)(1)(A) of the Act.[4] *Id.* at 1386. Then, without any reasoning, the Board stated: "Similarly, we find that by refusing to recognize and give effect to the effective resignations of [the supervisors, the union] violated Section 8(b)(1)(B) of the Act." *Id.* at 1387. Under *Register Publishing*, Local 458's refusal to accept Evola's and Slattery's resignations violates Section 8(b)(1)(B).

**4.** Section 8(b)(1)(A) of the Act makes it an unfair labor practice for a labor organization to restrain or coerce *employees* in the exercise of their rights to form, join and assist labor organizations and to refrain from such activities. 29 U.S.C. §§ 158(b)(1)(A), 157.

The Board, however, overruled *Register Publishing* with respect to the Section 8(b)(1)(B) violations in *Printing Pressmen Local 55 (Birmingham News Co.)*, 300 N.L.R.B. No. 1, 136 L.R.R.M. 1124 (1990). In *Birmingham News*, the Board noted that the *Register Publishing* case was unsupported by precedent and failed to distinguish between Section 8(b)(1)(A) and Section 8(b)(1)(B). 136 L.R.R.M. at 1126. Section 8(b)(1)(B), the Board recognized, "protects a fundamentally different right (an *employer's* right to select its own representative for purposes of collective bargaining or grievance adjusting) than the right protected by Section 8(b)(1)(A) (an *employee's* right to engage or refrain from engaging in the activities protected by Section 7)." *Id.* The Board rejected a per se rule that a union's refusal to accept a supervisor's resignation violates Section 8(b)(1)(B). Rather, the Board held that "the Union's refusal here to recognize and give effect to the resignations tendered by [the supervisors] can be found unlawful only if it is shown that the Union thereby coerced and restrained *the Employer* in the selection of its 8(b)(1)(B) representatives." *Id.*

Evola and Slattery argue that we should follow *Register Publishing* rather than *Birmingham News* complaining that *Birmingham News* is incoherent and incomprehensible. We disagree. The Board in *Birmingham News* clearly stated its reasons for overruling *Register Publishing.* The reasoning is sound and consistent with the Supreme Court's decisions in *Local 340*, 481 U.S. at 588, 107 S.Ct. at 2011, and *Writers Guild*, 437 U.S. at 430, 98 S.Ct. at 2434, which require the Board to make a factual inquiry, on a case by case basis, into whether a union's discipline adversely affects an employer-representative's performance of his collective bargaining or grievance adjusting duties. *Register Publishing* precludes such a factual inquiry and is therefore inconsistent with the deci-

sional rules established by the Supreme Court.[5]

## B. Expulsion from the Union

 Similarly, there is no evidence that the expulsion of Evola and Slattery from Local 458 had any coercive effect on the performance of their Section 8(b)(1)(B) duties. Noral allowed its supervisors to be members of Local 458 but certainly did not require them to be members. In short, Noral did not care whether or not Evola and Slattery were members of the union. Further, the Board found that Local 458's expulsion notices did not threaten to take any other punitive action against Evola and Slattery, such as fines, and that Local 458 did not make any further attempts to collect the post-resignation dues. Finally, although Evola and Slattery wanted to resign rather than be expelled, they did want out of the union. Under these circumstances, the Board correctly found that Local 458's expulsion of Evola and Slattery did not coerce Noral and did not violate Section 8(b)(1)(B). *See, e.g., Food & Commercial Workers Local 81 (MacDonald Meat Co.)*, 284 N.L.R.B. 1084, 1086 (1987) ("absent some threat of monetary penalty, suspending or expelling those who have signified their intent not to belong to the union ... does not tend to coerce or restrain them").

## C. Demands for Discharge

 Finally, the record fully supports the Board's finding that Local 458 did not violate Section 8(b)(1)(B) by demanding that Noral discharge Evola and Slattery pursuant to Section 2.3 of the collective bargaining agreement. Local 458 demanded that Noral discharge Evola and Slattery on September 22, 1983. At that time, Noral knew that the collective bargaining agreement had expired five months earlier and that it was no longer bound by Section 2.3. Ac-

cordingly, on the day he received the demands, the president of Noral told Slattery "not to worry about it." In addition, just five days after receiving the demands for discharge, Noral informed Local 458 that it rejected the demands and considered them unlawful. Thus, as the Board correctly concluded, Noral understood from the beginning that Local 458's demands were perhaps a mistake and, in any event, without effect. The demands for discharge could not have coerced Noral. Further, we agree with the Board that any coercive effect on Noral was fully cured by Local 458's October 4, 1983 letter admitting the demands for discharge were an "inadvertent error" and stating it had no intention of ever demanding Evola's and Slattery's discharge.

### III.

For the foregoing reasons, the petition for review is

DENIED.

---

**5.** We do not hold, however, that a union's refusal to accept the resignation of a supervisor could never violate Section 8(b)(1)(B). For example, if an employer insists (as it is his right to do) that his supervisors resign from the union, but the union refuses to accept a supervisor's resignation, the union may have coerced the

employer in his choice of representatives thus violating Section 8(b)(1)(B). These facts do not exist in this case. Noral allowed its supervisors to be members of Local 458. Thus, Local 458's refusal to accept Evola's and Slattery's resignations could not have coerced Noral.